J. NOTT & Co. *vs.* KANAHELE.

ON APPEAL ON POINTS OF LAW FROM CIRCUIT JUDGE LYMAN, OF THE THIRD JUDICIAL DISTRICT.

WHERE THE DEFENDANT agreed to work for the plaintiffs on the Waiohinu Plantation, or in case of the transfer thereof, for their assigns, for a specified term;

HELD (JUDD, J., dissenting), that the clause to work for assigns distinguishes the case from the "Waihee Plantation *vs.* Kalapu," 3d Haw. R., 760, and the contract remains in force in favor of the assignee.

Opinion by HARRIS, C. J.

As this case is presented to me, it seems to me to have an

ingredient which makes it differ essentially from the case of the owners of " the Waihee Plantation *vs.* Kalapu." In that case the contract was in the ordinary form, but in this case the contract has an extraordinary clause put into it, to the effect that the defendant "in case of the transfer of the Waiohinu Plantation" will work for the persons to whom such plantation shall be conveyed. That is to say that the defendant voluntarily contracted with the plaintiff that he would work not only for him, the plaintiff, but in case the plantation should be sold, he would work for whomsoever should become the purchaser. Now it seems to me that this contract of the defendant's became an essential part of the consideration between Messrs. Nott & Co., and Mr. Hutchinson. The defendant voluntarily entered into the contract, not illegal in itself, and cannot complain that he is required to keep that contract. Mr. Hutchinson has entered into his bargain with Messrs. Nott & Co., in view of the defendant's contract to labor, and has a right to call upon Messrs. Nott & Co. to enforce their contract with the defendant, and does so call upon them, and would be entitled to damages against them, if they did not make every effort to enforce the contract.

In this view of the case, the defendant would, if he continued to labor, be laboring for Nott & Co. They are the real and not fictitious plaintiffs in the case, are directly interested, and it is their duty to compel the defendant to perform the contract in terms which he has voluntarily undertaken to perform.

There is in this case no attempt to evade the law, or to make the contract assume any form which was not contemplated upon its very face, and which the defendant did not fully understand at the time of signing the contract.

For these reasons I am of the opinion that the judgment of

the local Circuit Judge should be reversed, and that of the District Justice should be affirmed.

CHAS. C. HARRIS, Chief Justice.

I concur :                     LAWRENCE McCULLY,

Second Associate Justice.

Honolulu, September 26th, 1877.

---

DISSENTING OPINION OF JUDD, J.

On the 1st of November, 1876, Kanahele, the defendant, bound himself by a written contract to serve J. Nott & Co., the plaintiffs, for a term of forty-eight months.   The language of defendant's engagement is as follows:

"That I, Kanahele, agree to labor for J. Nott & Co., or their agents, and for their heirs, executors and administrators, and, or for their assigns, in case of the transfer of the Waiohinu Plantation, for the term of forty-eight months, from the 2nd day of November, A. D. 1876, at such labor and in such place as they or their agents, or their heirs and assigns, as aforesaid, may direct, diligently and faithfully, and without deserting their service.   And it is understood that the "month" spoken of above is to consist of twenty-six days of actual labor."

On the 28th of February, 1877, J. Nott & Co. executed an agreement with Alexander Hutchinson by which they agreed to sell the "Waiohinu Plantation" to said Hutchinson for the sum of $17,000, he agreeing to pay $5,000 cash, and the balance in three, six and twelve months; Nott & Co., on receiving the full sum of $17,000, to execute and deliver to Hutchinson a good and sufficient deed for the said property.

A power of attorney was also given by Nott & Co. to Hutchinson to conduct the said plantation, and to direct and control the laborers engaged thereon.

Hutchinson took possession of the plantation, and says in his evidence taken by Judge Lyman, "the crop of cane to be

ground this year is to belong to me.    I am not accountable to J. Nott & Co. for the management of the place, or for any losses or profits of the place, or for any of its proceeds."

Kanahele refused to work on the plantation, alleging that it had been sold and that his contract was thereby annulled.    He was arrested under the law authorizing it, fined by the District Justice, and appealed to the Circuit Judge, who reversed the decision of the District Justice and ordered judgment for the defendant; whereupon an appeal was taken to the Supreme Court in Banco.

The statute under which this contract was made, reads as follows : Section 1417, "Any person who has attained the age of twenty years may bind himself or herself, by written contract, to serve another in any art, trade, profession or other employment, for any term not exceeding five years."    Subsequent sections and amendments thereto give the employer the right to enforce such contracts, by an appeal to the Courts, who are authorized to fine the laborer for willful desertion.

In so far as the labor laws of this country authorize the Court to punish a laborer for dereliction of duty by a fine, and in default of his paying it by imprisonment at hard labor, they are in derogation of the common law, and being penal laws should be construed strictly.

The words of Section 1417, above quoted, "Any person * * * may bind himself to serve another," means that he may bind himself to serve an individual who is ascertained and known to the laborer at the time of making his contract, or who could be ascertained by the laborer if he made inquiry.

This section does not authorize a man to make a contract to serve one who is wholly unascertained, or who is to be ascertained independently of the servant's will.

The policy of our institutions and laws forbids the making of such contracts.

Section 1424, of the Civil Code, recognizes this principle so far as to say that no contract of service made in pursuance of,

3

Sections 1417 and 1418, should bind the servant after the death of his master; that is, he cannot be held to work for the heir, executor, or administrator of his master. This last quoted section continues, "provided, however, that where servants shall be so bound by any company of individuals, the death of any one partner, or the change of partners, in such company, shall not operate or release such servant from the terms of his contract."

On the principle above stated, at common law, a death of one of a copartnership or change of partners (either of which would operate as a dissolution of the copartnership) would release the servant. Were it not for this statute, the servant could plead successfully, upon such a change occurring, that his consent to serve under the new conditions was essential to the binding effect of the contract.

This Court, in the case of the owners of the Waihee Plantation vs. Kalapu, January Term, 1877, has construed this section to mean "that whatever changes may take place in the original firm employing the laborer, the contract continues to be binding so long as one of the original members remain in the firm, to whom the laborer can look for the payment of his wages, for directions as to his labor and for humane treatment, all of which were the considerations which induced him to enter into the contract."

But there is no enactment of the Legislature that will compel a man to work for another *or his assigns*.

In the case last referred to, the Court say that "this is an attempt to assign a contract which is in itself unassignable."

If this expression is, in that case considered to be *obiter dictum*, I am willing to repeat it as *law* in this *case;* these contracts are not assignable; for if a man could be passed from one to another, like a chattel, by an assignment of his contract, it reduces him at once to a chattel, and this is a form of involuntary servitude which, though for a limited period, is,

nevertheless, repugnant to the policy of our institutions and forbidden by Article XI, of the Constitution.

But it is said that the laborer, Kanahele, in the case at bar, has agreed in his contract to work for the *assigns* of J. Nott & Co. The words are: "And or for their assigns in case of the transfer of the Waiohinu Plantation."

If a contract, that is, an agreement by which one person binds himself to serve another, is in its essence and nature unassignable, the law will not allow a laborer to make a contract which is in its terms assignable. He cannot make an engagement which is illegal and inconsistent with the liberty which every man has of choosing his own employer. He may not so barter away his freedom in advance, though his consent may be sought and obtained to serve the assignee of the plantation when he is ascertained.

But it is urged by the plaintiff that in this case there is no assignment of the contract.

It is true that this contract is not formally endorsed over or assigned by apt words, and it is true that the name of J. Nott & Co., the original employers, is used as the plaintiffs in this suit. But it is equally clear by the agreement of sale and the evidence in this case that J. Nott & Co. have no further interest in the labor of this respondent, except, as was suggested at the trial, that they may have obtained an enhanced price for their property on the understanding that the laborers bound to them at the time of their agreement could be held to labor on the plantation after its sale. There is, however, nothing in the papers to show what part of the consideration of sale, if any, the value of these labor contracts constituted, nor is it at all clear that Hutchinson could secure an abatement of the purchase money in the event of the law not allowing him to compel the services of these men. It is not to be presumed that an illegal consideration entered into this agreement of sale, nor that these parties contracted for a transfer of the men with the plantation. But Mr. Hutchinson says that "the crop

of this year is his; that he is not accountable to J. Nott & Co. for the management of the place or for any of its losses or profits, or for any of its proceeds." He is the only one interested directly or indirectly in the labor of respondent. The service in which it is sought to hold the respondent is that of Hutchinson and not that of J. Nott & Co. To my mind it is no answer to say that J. Nott & Co. are responsible. The laborer can have practically no redress against them except upon a suit for damages in case of misusage or violation of the terms of the labor contract. It would be idle for the laborer to seek from J. Nott & Co. modifications of the character of the work, or a change of the rules of the plantation which vary widely on each estate, or the dismissal, for example, of an inhuman overseer, when the position is insisted on by 'Mr. Hutchinson that he is "not accountable to J. Nott & Co. for the management of the place."

Although the title in the Waiohinu Plantation is still in J. Nott & Co., the possession of the place is in Hutchinson. It is now his enterprise. He is the virtual proprietor of the plantation so far as third parties are concerned, the virtual assignee of the business, if not of the labor contract of the respondent. To say that Hutchinson is not the virtual assignee either of the plantation or of the labor contract, when he is the only one actually and visibly enjoying its proceeds and results and responsible for its management, is to make a "distinction without a difference."

Practically Hutchinson is asking the Court to say that the respondent shall be compelled to work out for his (Hutchinson's) benefit a contract made between respondent and J. Nott & Co., and to which contract he is neither a party nor a privy.

It is obvious that the ownership of the land is not essential. An agreement might be made to sell and convey the estate at some date in the future, its possession and profits not passing until that date, which would not, in the least, affect the contracts for labor.

It is quite true also that the agreement of sale of this estate, even accompanied with immediate possession, does not of itself annul the contracts of J. Nott & Co. with the respondent. An employer of labor does nothing to vitiate or annul the contracts of his laborers by selling part of his estate, or the whole of it, or by purchasing more land or additional estates—providing the service in which he claims to hold his laborers be still *his* service, and not the service of some other person with whom the laborer did *not* contract.

But in deciding whether, as this is a personal contract and the laborer is not bound to the land as a serf, a laborer could be held to follow the service of his original employer whatever be the changes in the character of the employment, reference would have to be made to the terms of the contract as to the place of labor and whether the new employment differed so essentially from the old as to its severity, hazardous nature or disagreeable conditions as to make it unjust or unreasonable to compel the laborer to perform it for the same wages.

In saying that the contract for labor, being one whose obligations cannot be delegated nor its advantages assigned, is a personal one, I do not say that in order to preserve its vitality, the employer should actually reside on his estate, go into the field with his men and personally direct and supervise them. Though he may be an absentee in a foreign land—the laborer chose him as his master, knowing his character for fairness, liberality and humanity; knowing, too, the reputation of the estate as reflected from the proprietor, as regards the methods of work, the character of the overseers, or whatever particular circumstance induced him to enter his service—and to this master an appeal could always finally be made for redress.

It is no answer to say that one master is as good as another for the laborer, providing he fulfill all the written conditions of his contract, and observe whatever the law commands, doing nothing that is forbidden by it. Men are not cast in

the same mold, and so long as differences of disposition and character exist, just so long some masters will be preferred to others, and the laborer, if he is a free man, ought to be allowed to exercise his right of choice.

Nothing need be said here to extenuate the injustice done to the employer by his losing the money which he may have advanced to his employee as wages, for which he has the right to expect service in return. If he, by disposing of his business to another, has placed himself in a position in which he is no longer able to afford employment to his laborers, he cannot complain that they are not able to repay him the advance, or that the law will not compel them to work out the advance in the service of another.

But little light is shed upon this question from the authorities. We are peculiarly situated. Here capital seeks labor. In the countries where the precedents of the common law are formed labor seeks employment.

But it has frequently been decided that an apprentice is not assignable. Hall *et al. vs.* Gardner *et al.*, 1 Mass., 172; Davis *vs.* Coburn, 8 Mass., 299.

In Clement *vs.* Clement, 8 N. H., 473, the following language is used by Richardson, C. J., by way of illustration:

"There are cases, without doubt, where a contract cannot be assigned, without the consent of both parties. Instances of this kind may be found, where young men contract to labor for farmers by the month or the year, and where it is understood that they are to labor on the farm, live in the family, and be under the directions of the hirers.

"In such cases these circumstances become a part of the contract, and they are not bound to labor on other farms, under the directions of other persons, or to live in other families, without their consent."

This language can well be applied to the labor contracts of this country.

After a deliberate consideration of this case, I am of the

opinion that for the reasons assigned, the judgment of the Circuit Judge should be affirmed..

Messrs. Castle and Hartwell for the plaintiffs..

Messrs. Jones and Dole for respondent.

Honolulu, September 26th, 1877.